All right. Good morning, your honors. May it please the court, counsel. My name is Tim Billion. I am representing the appellant, the Honorable B.J. Jones. Now, my client is not a party to the underlying tribal court dispute here. My client is here today to vindicate the tribal court's right to hear the cases that properly come before it. And this case in particular presents an important question about the scope of tribal court jurisdiction. The district court's grant of a preliminary injunction against the tribal court failed to properly consider the tribe's authority to enforce contracts and commercial arrangements involving tribal members that relate to commercial activities on the reservation. Because the FedEx tribal court complaint arose out of WPX's agreement with the FedEx and concerned commercial conduct on the reservation, the tribal court had jurisdiction over the FedEx suit. And so we would respectfully ask that this court reverse the decision of the district court that granted a preliminary injunction. I want to start with the side letter agreements because that's really where this all comes from. The federal regulations at issue allow, but they do not require side letter agreements for leases like this or for rights of way like this. Because the side letter agreements were independently negotiated between WPX and the FedEx and they were not imposed by federal law, this case falls under the first Montana exception. But they would, as the district court pointed out, there would be no side letter agreement without the right of way, correct? That's correct, but the provisions in the side agreement are ancillary to the grant of the right of way. And so the, put it a different way, the right of way could exist with or without the side letter agreements. Could a side agreement exist with or without the right of way? No, they become incorporated into the right of way. But there's nothing in the right of way that there's a federal regulation that requires anything that's in the side letter agreements. So when you say incorporated into the right of way, I'm a little confused because I guess because of the BIA's statement, well, we can't find this. This is not part of the right of way. Where are we on that question? So my understanding, and again, Your Honor, my client is not a party to that issue, is that there have been no developments on WPX's appeal. The initial determination of the BIA was that it did not have those in its file. And WPX has appealed that, and I am not aware of any further developments. Does that result affect how we view this case? I don't think it does, Your Honor, because this case, the case that is before this court right now is about whether the tribal court has jurisdiction over the side letter agreements. And so the side letter agreements, although they become incorporated into the right of way, don't independently impose a federal regulation. The side letter agreements could be different from one right of way to the next right of way to the next right of way. Well, I guess what I was thinking is if the BIA says, well, we don't have this, this is not part of the right of way, and then the district court here has said that the tribe does not have jurisdiction over a dispute regarding the side letter, then where would you go? As a practical matter, Your Honor, the BIA's inability to find the side letter agreements in its file, I think, practically means there is not a federal remedy here if BIA is not going to enforce those. Is the appeal still pending? I believe it is, Your Honor. Again, I have not heard any further developments beyond the submission of the appeal to the BIA. If the BIA were to determine that the side letter agreements were not incorporated, wouldn't that strengthen your position? I think it could, Your Honor, but the reality is that the tribal jurisdiction, I think, is independent of the ability of the BIA or any other tribunal to address other matters. For example, because we are not talking here, by the way, about a tribal court canceling a federally issued right of way. That is not what has been requested in the underlying tribal court action. All that has been requested is damages for allegedly violating a smoking ban. We are not talking here, again, about whether the BIA can cancel a lease or whether it could take other actions with respect to the right of way. What we are talking about here is whether a tribal court has jurisdiction to adjudicate, really, a breach of contract claim. What does the regulation tell us about that? It seems like the regulation, and forgive me for not remembering it off the top of my head, I guess it is 169.403E. That reads as if the tribe does have jurisdiction over something like this. I agree, Your Honor, and there are a number of places in the regulations that confirm that reading. In particular, I believe it is 169.9 and 169.10 also confirm that tribal jurisdiction exists over things like this. It all happens in the context of a set of regulations that are designed to maximize rather than replace tribal jurisdiction. In fact, that is in the right of way itself. If you look at Section 4 of the first right of way, for example, there are four right of ways in the record. This is on page 11 of the Joint Appendix. Section 4 is very clear that the tribal court and the tribe retain their jurisdiction to the maximum extent that it already existed. We do not have a regulatory process here that is designed to or intended to replace or diminish tribal court jurisdiction. That particular regulation, I could not really find much litigation on it. Is there? I do not think so, Your Honor. I think that is likely because as a practical matter, it does not get to this point. No, I am not aware of decisions that interpret that. Counsel, to me, the key issue here for purposes of the first Montana exception analysis is whether the provision or conduct in question here implicates the tribe's sovereign authority. WPX says it does not. What is your position? You are getting into the Plains Commerce Bank issue, Your Honor. I think that what Plains Commerce Bank was addressing was the overall concept, the theoretical underpinnings of tribal jurisdiction. It had to relate to tribal sovereignty, tribal self-governance somehow. The first Montana exception does. If you have a commercial arrangement happening on the reservation, the tribe has a sovereign interest, just like any other sovereign, in regulating and being able to adjudicate activities that occur at least on reservation or Indian land here. That has been a key distinction that has happened throughout the line of cases that we see. Was this on Indian land? By that, I mean land that is owned by the tribe or that is owned by a member of the tribe. Here, we have non-member fee land. No, Your Honor. Here, in Plains Commerce Bank, it was non-member fee land. In this case, the FedEx are tribal members. I'm sorry. It's held in trust. Correct. Yes. The beneficial owners are the FedEx and the land is held in trust by the United States for the FedEx. Here, this is Indian land. It's not non-tribal or non-Indian fee land. That's the most, I think, important distinction with Plains Commerce Bank. So, the sovereign interest or the tribal interest in governance is just that. It has an interest in governing activities that occur on the reservation. A line of cases recognize that and I'm not going to repeat all of them cited in our briefing. Surely, the Atkinson Trading Post case and frankly, I think the most on point case is the Williams v. Lee case. There, you had a non-tribal entity that was doing business as a general store on the reservation. Incidentally, it had a federally required license just like WPEX here had a federally granted right-of-way. So, in Williams v. Lee... In Williams v. Lee, yes. In fact, that was cited by the Supreme Court when they created the Montana Exception. It was, I believe it was a primary case cited under the first Montana Exception. Yes, Your Honor. I do want to briefly address the Kodiak decision because this case is not Kodiak. I believe that was already before a panel of this Court and I believe, Judge Kelly, you were on that panel where you said that this case needs to be considered. The Montana factors need to be considered separately and independently from Kodiak. And it's not Kodiak here because nothing in the rights-of-way divest the tribe of jurisdiction. There are several places in the rights-of-way themselves and in the regulation that rely on and reinforce the continued existence of tribal jurisdiction. And we already talked about Section 4. Section 5 of the rights-of-way also requires compliance with tribal law. And so, if the tribe has that type of regulatory jurisdiction, it follows that it also has adjudicatory jurisdiction over instances like this. So, and I believe that was an important part of the District Court's conclusion here. The District Court, this page is 11 to 12 of its opinion, repeatedly said that these side letter agreements are a relationship entirely controlled by the Federal Government, dominated by the Federal Government. And I think that's a clear reference to Kodiak. And that's just not the case here, Your Honor. And if you look at what's in the side letter agreements themselves, you know, there's requirements that no rocks be left behind larger than five inches. There's a 15-mile-an-hour speed limit, dust control, grass replacement, reclamation of lands, factors like that, in addition to a smoking ban, trespassing ban, and hunting ban. All of those things don't appear in Federal regulations. They're only in those side letter agreements because the FedEx independently negotiated for each of those conditions. So I want to touch briefly, before I sit down and reserve the rest of my time for rebuttal, on Iowa Mutual versus LaPlante. That's 480 U.S. 9, page 18. It says, tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty. That's the tribal interest at issue here. That same passage goes on to say that when you have commercial activity occurring on the reservation, there's actually a presumption of tribal jurisdiction over it. And that's the result of Montana and Williams v. Lee pointing to a tribal forum to resolve disputes about the uses of land within the reservation. Unless the Court has any more questions, I will reserve my remaining time for rebuttal. May it please the Court. My name is Rob Forward. I represent the Apple League. It is now known as Devon, Hannergy, Williston, LLC. And when this case began, it was known as WPX, Hannergy, Williston, LLC. And both are a handful and a mouthful. And when the briefing has all been done, it's all been referred to as WPX. And so I'll refer to it by its prior name here today, not to confuse anything. The Federal District Court did not abuse its discretion when it issued the preliminary injunction. The general rule that prohibits tribal courts from exercising jurisdiction over non-tribal members that comes from Montana applies to this case. None of the exceptions apply. As this Court knows, there's two Montana exceptions. The tribal appellant has focused on the first exception, which as the Court knows, depends largely on a consensual relationship that implicates the tribal sovereignty of the tribe. And in this situation, that exception has not been met because the consensual relationship isn't quite consensual in that the only way that an applicant for a right-of-way to the BIA can obtain a right-of-way is to first, by statute, have the consent of the allottees, the tribal members who are on the allotments. That's in statute and then the BIA took it a step further and the BIA has extensive regulations that say the relationship between the applicant for the right-of-way and the allottees, in this case, the FedEx, can negotiate side letter agreements or conditions. And as I understand it, the Federal Government, BIA, have nothing to do with those. They're not a part of those negotiations. Is that right? Let me answer that and it seems like two questions there and I just want to make sure there's a distinction. It's my understanding, although it's not in the record, that the Federal Government is not involved in those negotiations, but there's nothing that prohibits them from being involved in those negotiations. There's nothing requiring it. I would be surprised if the Federal Government, they wouldn't be involved if an allottee wanted them involved. And when you said earlier, Judge Kelly, that it has nothing to do with the Federal Government, I want to be careful there because there is absolutely no doubt that these conditions were incorporated right into the right-of-way agreements. That's not a question at all. In fact, when this case was before the Eighth Circuit previously in DICTA, this Court recognized that those conditions are incorporated right into the right-of-way grant. Which is sort of hard to reconcile, at least with the current state of, I guess, your client's case with the BIA saying, we don't have these side agreements. Which I would say to you is not a final decision. It's still appeal. And I understand. I'm just trying to sort through what impact that decision may have on this because if the BIA says, and I'll just repeat, I guess, the questioning we had a few minutes ago is, if the BIA says, well, we don't have any record of that, that's not within our world, and then the district court here has said side agreements cannot go to the tribal jurisdiction, the tribal courts, where would you go? It's my understanding first that the position that the BIA took, that because they don't have them physically in their files, it's not incorporated into the right-of-way, that's legally absurd. There's no support for that. I mean, to me, that is an absurdity that you have to almost ignore to get to the point where you'd have a situation where you'd have the district court, federal district court sitting in North Dakota saying, yes, they are incorporated. The Eighth Circuit saying in DICTA in a previous ruling on this case that, yes, they are incorporated, and then you have the BIA going down that road. I think your question is, where is the recourse? Yeah, yeah, where is the crease? And I understand your argument. We're not really here to resolve that aspect of it. I'm just trying to put this together because the BIA has said it, and obviously it's taking some litigation to get through and to get what you think is the obvious answer, but what if it remains as is? That's what I'm just trying to figure out as a practical matter, then where would folks go? As a practical matter, first, either the FedEx or WPX has a right to force the BIA to make a decision, and then that would make its way. Let's say they upheld their decision. That would make its way through the administrative appeal process, get in front of a district court, and get resolved that way. My firm belief is it would be resolved in a way that would send it back to the BIA for some consideration. Having said that, there is an idea with the Federal District Court in Bismarck that believes that if not for tribal court jurisdiction, and if the BIA can only address certain issues vis-a-vis the Eighth Circuit decision, recent decisions in the Chase Andover case where I believe you found the BIA can't resolve everything with its administrative tools, it can do some fact-finding, etc., the district court has indicated in oral arguments that they believe, the district court believes, that it has jurisdiction over at least some of this dispute. Anything that the BIA doesn't resolve would come then back to the district court in North Dakota. In fact, the FedEx also seemed to believe that because they made the same claims as a counterclaim in this case as they did in tribal court. They lifted their claims on their paper. It looks identical, and they made them counterclaims in this case. We moved to dismiss those for facially 12B6 issues. The court denied that motion, and the counterclaim has stayed while this case is taken care of. What do you make of the regulations that seem to permit the tribal jurisdiction over some of these agreements? Two things about that, Your Honor. First and foremost, I question whether they're valid. Montana and all of the other cases talk about Congress being the ones that can extend jurisdiction and give the tribes the ability to do regulation over things, not the BIA, not the executive branch through the Secretary of the Interior. I question the validity of a BIA regulation doing what Congress is supposed to be doing. That's the first thing. Second thing is, I think the most important regulation in this situation, to your question, is the one that talks about the parties can choose. Let's say it is valid. Let's say the BIA can do this and give the tribal jurisdiction expansion of its sovereign jurisdiction. The regulations themselves say that if you want to create these conditions, in other words, Mr. and Mrs. Fedig and WPX, if you want to have these extra conditions in order to create them, in order to have them incorporated in your right-of-way, you have to set out where and how the remedies are going to be administered. In other words, you have to have some forum selection built into your consents. Is there any space where you found that, or is this just the way you're reading it? No, that's in the... Is it another regulation? I don't have it at my fingertips, but it's in the 25 CFR Part 169. You're saying there's a section that indicates that the parties would have to take another step to actually identify the where and the how? Yes. I think that's an excellent tell that these regulations don't have to be in the form to create and extend or expand tribal jurisdiction, but to give the parties the opportunity to do some forum selection. I'm not entirely sure how valid that would be either, but I think it... If that's valid, then what does that do here for this case? Well, the parties didn't... The Fedex didn't and WPX didn't pick any forum, none. So if they had picked a forum, taking everything that you've said, assuming it to be true, if they had picked a forum and the forum was the tribal court, that would be legitimate here? I don't know if it would be legitimate, but I think as a practical matter, I wouldn't be standing here. It would have been resolved. If the parties decided that was going to be their forum, as a practical matter, I think that's where they would have ended up. Well, counsel, that sounds like you're saying it would have just been a matter of the parties agreeing, as opposed to whether the tribe had the authority and the jurisdiction. Yeah, that is. And I don't necessarily agree that even that would be valid, because I'm  Well, it sounds like you're saying it would have been valid if they'd just gone an extra step and wrote it in, which would presume that the tribe does have jurisdiction. No, I may have missed both. Just now have a clear designation of a forum. I may have misspoke, Your Honor. When I was responding to Judge Kelly's questions, what I was indicating that the overarching idea that somehow the BIA regulations expand or give the tribal courts jurisdiction, I believe is inaccurate. And that I raised the point about the forum selection clause to point out that even if it was true, I qualified my comments as saying even if it was true, which I don't believe it is, the parties didn't pick a forum here. And so where are we at then? The natural forum under this federal scheme is the BIA. Counsel, I'd like to go back to another aspect of the first exception under the Montana case. And the question is, why doesn't the side letter agreement provision that's at issue here implicate the tribe's sovereign authority? It doesn't because the entire regulatory scheme for the right-of-ways is under the federal umbrella. And that, I have to counter something my colleague said earlier about Kodiak. If you look at the district court's opinion, they don't cite Kodiak hardly at all. But they do focus on the implication question. And in evaluating whether or not tribal sovereignty is going to be implicated, the question is, how can it be implicated when all of the regulation, all of the control, all of the terms of the right-of-ways are under the purview of the BIA? What if the provision, instead of prohibiting smoking on this land, prohibited bringing alcohol or marijuana inside the reservation? Would that implicate tribal sovereign authority? Well, if your question is whether or not there's a condition that's added by the parties that prohibits marijuana and alcohol in the right-of-way, I do not believe it would implicate tribal sovereignty. A lot of what we're talking about here, and we certainly, I've avoided talking about what kind of land it is because when you read the cases, that becomes, in my thought, thinking a bit of a quagmire, but some of the cases talk about when you have a right-of-way and the tribe is either given away or agreed to a right-of-way or it's never been, you know, they've never had authority to do anything with a right-of-way, they lose the ability, at least in part, to exclude people and set the terms of entry on that land. And so, when you don't have, they don't even have to lose that ability absolutely, just partially lose the ability to exclude others from that property, then they lose jurisdiction over it. And so, to your question, I would think that just about anything reasonable that's in the conditions would not fall within the tribal jurisdiction. The other thing I have to point out is that we continue to call these side letter agreements, which I think is a very misleading misnomer. They're not side letter agreements. They are conditions put in place between the parties under the authority of the BIA. Side letter agreements almost seems like it's a little, you know, a little something on the side that everybody agreed upon almost under the table. It almost seems nefarious. But they are called that. In common parlance, they are, but that term doesn't show up anywhere in the nowhere in the Code of Federal Regulations. But it's in the document that's called the side letter agreement, right? Okay. Some of them are, and they're not letters. I mean, there's nothing about them as a letter. I think it must be a term that's just been customarily applied to those conditions. But I don't want the court to think that, to be subliminally led astray by thinking that somehow these are separate and apart when they're not. They're a part of the entire right of way. Thank you. Thank you. All right. I want to begin my rebuttal by addressing the point that my colleague made about the consensual relationship here not being entirely consensual. WPX is a sophisticated entity. And when they negotiate side letter agreements, which, as you, Judge Kelly, noted, literally the name of the document in the record, they could have refused. They could have altered the conditions. But they didn't. They agreed to these conditions. And these are negotiated conditions not between WPX and the BIA, not between the FedEx and BIA, but between WPX and the FedEx. The other point that I would make is the BIA will approve any conditions in a side letter agreement so long as they don't otherwise violate the law. So the parties can put anything they want in there. They could have put conditions in there, Judge, about, you know, not bringing alcohol onto the right of way, not bringing marijuana onto the right of way. And those would have been permissible conditions to incorporate in there. But would they implicate the tribe's sovereign authority? I think they would, yes, for a variety of reasons. The first being that the tribe has a sovereign interest in enforcing commercial agreements within the reservation and has an interest in providing a forum to adjudicate contracts between members and non-members relating to commercial activity on the reservation. They would also implicate the tribe's sovereign interest in, you know, regulating alcohol possession, regulating use of drugs. Just like cigarette butts here, and I know there was some discussion in the tribal court case about the danger of wildfires, I don't think that's where we need to focus here because I think that this is a clear Montana 1 case and the tribal sovereign interest is no different from any other sovereign. When you have commercial activity occurring with your citizens within your boundaries, you have an interest in providing a forum, both regulatory and adjudicatory forum for that. I also want to point the court to you. Counsel, this is Judge Smith. What's your response to the appellee's position that there should have been a forum designated in the side agreement? Yeah, thank you, Judge Smith. First of all, I don't believe that was raised below, so I don't think that the court needs to consider it now. But beyond that, I don't think that WPX can take the position now that somehow they didn't validly agree to these conditions. That would be a real bait and switch at this point. They already drilled. They are actively producing oil on the FedEx land. So for them to say they obtained the landowner's consent but didn't really agree to it, I think would mean that everything that's happened is a trespass. So I don't think that that is a convincing argument. But the biggest point, Your Honor, is that the absence of a forum selection clause means you go with the Montana factors. I would point the court to Section 4 on page 11 of the Joint Appendix, which says that the tribe maintains its existing jurisdiction over the land, activities, and persons within the right-of-way, and this grant does not diminish to any extent. And then Section C, the tribe's inherent sovereign power to exercise civil jurisdiction over nonmembers on Indian land. Section 4 couldn't be clearer that this process does not exist to deprive the tribal court or the tribe as a sovereign of its rights as a sovereign. It does not do that implicitly or explicitly. And the last point I would make, because briefly I see my time is up, is that the remedies are different. BIA can address things like canceling a right-of-way, abandonment of a right-of-way, but here what we have is a civil complaint for money damages relating to a breach of contract. And that's something that's squarely within the purview of the tribal court. And for those reasons, Your Honors, I'll just briefly conclude this is a significant case for every tribe within this circuit, and the court should defer to the tribal court's interpretation of its sovereign interests and should reverse the decision of the district court. Thank you. Thank you.